UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| BYRON F. DAILEY, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 2:14-CR-96-JRG-MCLC-1 |
| | ) | 2:16-CV-163-JRG |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 44]. The United States responded in opposition on July 20, 2016 [Doc. 52]; Petitioner replied in turn on October 3, 2016 [Doc. 56]. For the reasons discussed below, Petitioner's § 2255 motion will be **DENIED** and **DISMISSED WITH PREJUDICE**.

I. BACKGROUND

A. Offense Conduct

On June 17, 2014, a confidential informant made a recorded call to Petitioner and arranged to purchase five Suboxone pills and an ounce of methamphetamine [Presentence Investigation Report (PSR) ¶ 8; Doc. 23 ¶ 4]. In a recorded and surveilled meeting, the informant then met with Petitioner and purchased the pills for $100 [PSR ¶ 9; Doc. 23 ¶ 4]. Later that day, after the informant had given the pills to the agents, the informant went to Petitioner's residence on Cedar Creek Road, in Russellville, Tennessee, and again met with Petitioner [*Id.*]. They traveled to a nearby boat ramp where Petitioner sold the informant an ounce of what Petitioner proffered to be methamphetamine, although the substance later proved

to be rock salt [*Id.*]. The transactions were monitored and surveilled by Morristown Police Detectives Jack Everhart, Michael Hurt, Chris Blair, and Todd King, as well as Tennessee Bureau of Investigation (TBI) Agent Josh Orlowski. Detectives Hurt, Blair and Everhart searched the informant and his vehicle before and after each encounter with Petitioner, while Agent Orlowski took control of the drugs [Doc. 52-1 (case file notes and drug buy surveillance log)].

Two days later, on June 19, 2014, Petitioner gave the informant four Suboxone pills as partial repayment for having sold him fake methamphetamine [PSR ¶ 10; Doc. 23 ¶ 4]. That same day, officers obtained and executed a search warrant at Petitioner's residence on Cedar Creek Road [PSR ¶ 11; Doc. 23 ¶ 4]. Detective Hurt, the affiant on the search warrant, provided the following information to establish probable cause for issuance of the warrant:

> A confidential informant working with the Morristown Police Department who has proven to be reliable has within the past five days, purchased narcotics from Byron Dailey. The transaction took place at [redacted] Cedar Creek Rd Russellville, TN. The purchase was monitored and controlled by narcotics agents. The confidential informant was searched before and immediately after the transaction took place. The informant was wired with a transmitter which allowed the agents to monitor the entire transaction. Prior to the transaction, the informant was given currency in which to purchase the narcotics. When the transaction was completed, the agents continued to maintain audio and visual contact with the informant. Following the transaction, the agents immediately met up with the informant, retrieved the purchased narcotics and searched the informant and the informant's vehicle.

[Doc. 52-2 (search warrant)]. Pursuant to the warrant, state and local officers seized 115 Suboxone pills, a baggie of methamphetamine, a .22-caliber Jennings J-22 semi-automatic pistol and ammunition, $618 cash, and drug paraphernalia [PSR ¶¶ 11, 15]. They also found a container of sea salt, three digital scales, baggies, and various other pills [*Id.*]. A search inventory form described each item seized, its location, and the officer who located it [Doc. 52-3

(evidence control form and list of items seized)]. A hand-written evidence log also identified the officers present at the search and the location of the items those officers seized [*Id.*]. When interviewed on June 20, 2014, Petitioner admitted that he regularly purchased methamphetamine for himself "and his friends," and that he purchased a "50-sack" of methamphetamine one day earlier [PSR ¶ 16].

In August of 2014, Petitioner was charged with distributing Suboxone on June 17, 2017 and June 19, 2014 (Counts One and Two) and possessing with intent to distribute Suboxone on June 19, 2014 (Count Three), all in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(E) [Doc. 3]. He was also charged with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(B)(1)(C) (Count Four); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five); and possession of a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Six) [*Id.*]. Pursuant to 21 U.S.C. § 851, the United States filed notice of its intent to enhance Petitioner's sentence in light of a prior felony drug conviction [Doc. 21 ¶ 2].

**B.    Guilty Plea**

Petitioner agreed to plead guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to Counts Three and Four—possession with intent to distribute Suboxone and methamphetamine— in exchange for dismissal of the remaining counts and an agreed-upon sentence of 150 months' imprisonment [Doc. 23 ¶¶ 1-2, 6; PSR ¶¶ 3-4]. He waived his right to appeal and his right to file "any motions or pleadings pursuant to . . . § 2255[,]" except for claims of prosecutorial misconduct or ineffective assistance of counsel [*Id.* ¶ 10].

As part of his plea agreement, Petitioner stipulated that, because of his prior felony drug conviction, he was subject to enhanced statutory maximums of 20 years' imprisonment for Count

Three and 30 years' imprisonment for Count Four [Doc. 23 ¶ 1(a), (b)]. During the plea colloquy, this Court verified that Petitioner understood he was under oath, that he was not suffering from mental illness or drug addiction, and that he understood the purpose of the hearing [Doc. 50 at 3-4]. This Court then confirmed that Petitioner told his lawyer everything he knew about the case and that counsel was fully aware of all the facts upon which the charges were based [*Id.* at 4]. Petitioner affirmed that he had ample time to discuss the case with counsel, with whose representation he was satisfied [*Id.* at 5-7]. Petitioner also affirmed that counsel advised him of the nature and meaning of the charges and every element of those offenses, and advised him as to any defense that he might have to those charges [*Id.* at 4-5]. This Court reviewed the charges and the elements of the offense, after which Petitioner swore that he read, fully understood, and signed the plea agreement [*Id.* at 5–7]. He also swore that his attorney explained all its terms and conditions [*Id.* at 7]. When asked a second time if he was satisfied with his attorney's representation, Petitioner responded, "Yes, Sir, Your Honor" [*Id.* at 7].

This Court advised Petitioner of the legal rights he was giving up by pleading guilty and he denied that anyone threatened him or forced him in any way to plead guilty [*Id.* at 8-10]. Petitioner acknowledged that he read and agreed with the summary of his offense conduct in the plea agreement [*Id.* at 11-12]. This Court reminded Petitioner of the statutorily authorized penalties for his offenses and that he agreed, pursuant to Rule 11(c)(1)(C), that concurrent terms of 150 months' imprisonment would be an appropriate sentence [*Id.* at 13-14]. In response, he stated that he understood that this Court would have no discretion to impose a sentence other than the agreed-upon 150 months unless it rejected the plea agreement [*Id.* at 14-15]. Knowing the penalties, Petitioner swore that he still wished to plead guilty [*Id.* at 15].

    C.    **Imposition of Sentence**

Based on Petitioner's stipulations when pleading guilty, the United States Probation Office (USPO) deemed him responsible for 124 units of Suboxone and one gram of actual methamphetamine, for a marijuana equivalent of at least 20 kilograms and a base offense level of sixteen [Doc. 23 ¶ 4; PSR ¶ 23]. Based on three prior Tennessee convictions—two for aggravated robbery and one for felony evading arrest, the USPO deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines [PSR ¶¶ 29, 42-43, 47]. He received an enhanced offense level of thirty-four and criminal history category of VI [*Id.* ¶¶ 50–51]. A three-level reduction for acceptance of responsibility resulted in a total offense level of thirty-one and Guidelines range of 188 to 235 months' imprisonment [*Id.* ¶¶ 30-32, 74].

The USPO noted that the plea agreement significantly impacted the sentence because Petitioner would have faced a consecutive five-year statutory mandatory minimum for the § 924(c) offense and Guidelines range of 262 to 327 months' imprisonment if convicted at trial [*Id.* ¶¶ 4, 75-77]. The USPO went on to note that Petitioner would probably have been classified as an armed career criminal under 18 U.S.C. § 924(e) and subjected to that provision's fifteen-year statutory mandatory minimum if convicted of violating § 922(g)(1) [*Id.*].

During the sentencing hearing on August 27, 2015, this Court adopted the PSR's calculations and the resulting Guidelines range as 188 to 235 months' imprisonment [Doc. 51 at 5]. When asked why the parties agreed to a 150-month sentence, the United States attributed it to multiple factors, including the drug quantity and the fact that the purported methamphetamine turned out to be rock salt [*Id.* at 5-6]. The United States also noted that Petitioner would not have been an armed career criminal in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015) [*Id.*].

When invited to allocute, Petitioner apologized to the community and this Court for his offenses [*Id.* at 8-10]. This Court then explained to Petitioner that, in its view, the attorneys may have inaccurately predicted the advisory Guidelines range when negotiating the plea agreement, in that, if accepted, the agreement required a sentence 38 months below the applicable range:

> [You] may have made a better deal than you might otherwise have made because the lawyers in the case didn't properly calculate the Advisory Guideline Range, thought it was going to be lower. I don't know whether that's the case or not, but sounds like there was a, an error on the part of counsel in calculating the advisory guideline range; but the point is you made a very good plea agreement here, 38 months below the bottom of the guideline range.

[*Id.* at 11-12]. In the end—on August 20, 2015, this Court accepted the Rule 11(c)(1)(C) plea agreement and imposed the agreed-upon 150-month sentence [*Id.* at 12-16; Docs. 37, 38]. Consistent with the waiver provision in his plea agreement, Petitioner did not appeal and, as a result, his conviction became final for purposes of § 2255(f)(1) on September 3, 2015. *See Sanchez-Castello v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (explaining that an unappealed judgment becomes final after the fourteen-day period for filing a direct appeal),

Less than one year later—on June 10, 2016, Petitioner filed the instant § 2255 motion [Doc. 44].[1] The petition relies part on *Johnson*, which held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague and contains four grounds for collateral relief.[2] In the first, Petitioner argues that *Johnson* invalidated the

---

[1] On February 11, 2016, this Court appointed Federal Defender Services of Eastern Tennessee (FDSET) for the limited purpose of determining whether Petitioner was entitled to collateral relief based on *Johnson*. E.D. Tenn. S.O. 16-02 (Feb. 11, 2016). After receiving notice of a conflict of interest [Doc. 46], this Court appointed substitute CJA counsel to fulfill FDSET's duties under the Standing Order [Doc. 47]. Consistent with that appointment, CJA counsel filed a notice that Petitioner's "case [was] not suitable for any *Johnson*-based collateral relief" [Doc. 49].

[2] Petitioner divides his theories into two grounds—*Johnson*-based and ineffective assistance, but liberal construction of the pro se filings reveals four avenues of collateral attack.

identically worded residual clause contained in Section 4B1.1, that his prior convictions for aggravated robbery only qualified as crimes of violence under that provision, and that he now lacks sufficient predicates for career offender designation [Doc. 44 at 4; Doc. 45 at 2–9].[3] In the second, he argues that counsel was ineffective for failing to object to his career offender designation based on *Johnson* at the sentencing hearing [Doc. 44 at 7; Doc. 45 at 10–11]. In the third, he argues that counsel was ineffective because he did not file a motion to suppress evidence recovered pursuant to the search warrant after he learned that the affiant on that document—Detective Hurt—had been arrested for misconduct in unrelated criminal investigations [Doc. 44 at 5; Doc. 45 at 9–10]. In his final ground, Petitioner suggests that his guilty plea was involuntary [Doc. 45 at 10].

The United States responded in opposition to collateral relief on July 20, 2016 [Doc. 52]; Petitioner replied in turn on October 3, 2016 [Doc. 56]. On March 6, 2017, the Supreme Court issued *Beckles v. United States*, which held that the advisory Guidelines are not "amenable to

---

[3]   The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* USSG § 4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

vagueness challenges." 137 S. Ct. 886, 894 (2017). Two weeks later, this Court entered an Order (1) explaining that *Beckles* necessarily meant that "*Johnson* . . . does not undermine sentences based on Guideline enhancements;" (2) instructing the parties to "file any motion that they want[ed] the Court to consider in conjunction with, or prior to, ruling on [the instant] petition[] on or before April 1, 2017;" and (3) requiring that responsive pleadings be filed on or before April 15, 2017 [Doc. 58]. On April 1, 2017, the United States supplemented its response [Doc. 59]. Petitioner did not reply and the time for doing so has now passed [Doc. 58].

## II. STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

### A. Ground One: Career Offender Designation After *Johnson*

To the extent that Petitioner argues that *Johnson* invalidated the Guidelines residual clause and that his prior convictions for aggravated robbery cannot be categorized as crimes of violence without that provision, that argument fails because the Guidelines are "not amenable to vagueness challenges." *Beckles*, 137 S. Ct. at 894. Because *Johnson* did not affect his status as a career offender, that decision cannot serve as a basis for granting the requested collateral relief.

8

Regardless, binding Sixth Circuit authority holds that Tennessee aggravated robbery categorically qualifies as a crime of violence under the use-of-physical-force clause. *See, e.g.*, *United States v. Bailey*, 634 F. App'x 473, 476 (6th Cir. 2015) ("Tennessee convictions for aggravated robbery and robbery are categorically violent felonies under the ACCA's use-of-physical-force clause."); *United States v. Mitchell*, 743 F.3d 1054, 1058–60 (6th Cir. 2014) (holding that all forms of Tennessee robbery are categorically violent felonies under the ACCA's use-of-physical-force clause); *see also United States v. Kemmerling*, 612 F. App'x 373, 375–76 (6th Cir. 2015) (reiterating that *Johnson* did not affect the use-of-physical-force clause). Because every method of violating Tennessee's aggravated burglary statute qualifies as a crime of violence, divisibility of the statute is irrelevant.[4] Petitioner's focus on the absence of the words "use, attempted use, or threatened use of force against the person of another" is misplaced because the absence of those exact terms does not prevent this Court from classifying convictions under Tennessee aggravated robbery statute as career offender predicates under Section 4B1.2(a)(1).

**B.     Grounds Two and Three: Ineffective Assistance of Counsel**

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *See also, Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or

---

[4]     To determine whether a particular offense qualifies as a crime of violence under Section 4B1.1, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation invariably satisfies one or more of the clauses in Section 4B1.2, then the conviction categorically qualifies as a crime of violence and the courts' task is complete. It is only when the statute criminalizes superfluous conduct that courts must determine whether the statute is divisible or indivisible.

9

omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (explaining that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

1. **Ground Two: Failure to Object to Career Offender Enhancement**

To the extent that Petitioner faults counsel for not challenging his career offender designation at the sentencing hearing, that ground fails because *Johnson* had no impact on the propriety of Petitioner's career offender designation. As a result, counsel's failure to raise an objection based on that decision could not have resulted in prejudice and this Court need not address whether the omission amounted to a deviation from professional norms. *See, e.g.*,

10

*Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection).

## 2. Ground Three: Failure to Move for Suppression of Evidence

Petitioner faults counsel for not moving to suppress evidence recovered pursuant to the search warrant after he learned that law enforcement arrested the affiant on that document—Detective Hurt—for misconduct in unrelated criminal investigations. Specifically, he claims that Detective Hurt "zealously mischaracterized and affirmatively misrepresented facts in warrant documents, police reports and in acquisition of evidence," and numerous other unnamed defendants obtained sentence reductions or release from custody as a result of Detective Hurt's improprieties [Doc. 44 at 5; Doc. 45 at 2, 10]. He also claims that he instructed counsel to file a suppression motion after the indictment of Detective Hurt, but counsel refused because it "would do no good" and would likely prompt the United States to file a § 851 notice and seek a life sentence [Doc. 44 at 5; Doc. 45 at 2, 9–10]. This theory of ineffective assistance fails for three reasons.

First, Petitioner has not identified any means by which counsel could have known about the misconduct before his entry of the guilty plea. Petitioner pled guilty on March 23, 2015, [Docs. 23, 24], but Detective Hurt's misconduct did not become public knowledge until WCRB News reported the indictment and arrest on July 2, 2015 [Doc. 52-4]. Because the indictment and arrest resulted from a confidential TBI investigation that was not open to inspection by members of the public, Tenn. Code Ann. § 10-7-504(2)(A), counsel had no way of knowing about the investigation and cannot be faulted for failing to file a motion to suppress on the basis thereof.

11

Second, Petitioner has not demonstrated that the proposed motion to suppress would have been successful. Because there is a presumption of validity for judicially authorized search warrants, anyone seeking to challenge the accuracy of the information contained in the affidavit for such a warrant must make a "substantial preliminary showing" that the affiant knowingly included false statements or made statements with reckless disregard for the truth, and that those statements were material to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–156, 170 (1978); *see also United States v. Zimmer*, 14 F.3d 286, 288 (6th Cir. 2014) (reiterating that it is the defendant's burden to prove that the affiant knowingly and recklessly induced false information). Petitioner has made no such showing. To the contrary, he has not identified specific falsehoods in the warrant affidavit or established that Detective Hurt's misconduct related to his criminal case. Conclusory allegations of misconduct cannot serve as the basis for vacating, setting aside, or correct Petitioner's conviction. *Accord United States v. Robinson*, 627 F.3d 941, 949 (4th Cir. 2010) (affirming the denial of a motion for retrial upon evidence that some of the investigating officers had engaged in unrelated misconduct).

Third, the account provided by Detective Everhart's report of the controlled substance transaction supports the description of events in the warrant affidavit [Docs. 52-1, 52-2], and Petitioner admitted those same core facts when pleading guilty [Doc. 23 ¶ 4]. Petitioner has not provided any reason to doubt the veracity of his sworn admissions. *See Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973) (explaining that a defendant who solemnly admits in open court that he is guilty of a particular offense may not thereafter raise independent claims regarding the alleged deprivation of constitutional rights that occurred before his guilty plea); *see also Menna v. New York*, 423 U.S. 61, 62 (1975) (holding that a guilty plea "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt").

### C. Ground Four: Unknowing and Involuntary Plea

While "no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge,'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)), "representations of the [petitioner], his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding," *id.* at 74. Thus, it is said "[s]olemn declarations in open court carry a strong presumption of verity," *id.*, and justify summary dismissal of any challenge based on conclusory assertions or contentions incredible on the face of the record. *Id.*

Petitioner's claim that counsel and the United States "threatened" him with the possibility of life imprisonment and thereby overcame his will to proceed to trial is contradicted by his sworn statement during the plea colloquy that no one put any pressure, either mental or physical, on him to force him to plead guilty [Doc. 50 p. 10]. Counsel had a duty to inform Petitioner that he would be subject to a life sentence if convicted of the charged offense and if the United States filed the requisite § 851 notice of enhancement based on his prior felony drug convictions. Because Petitioner has not provided any reason to doubt the veracity of his prior sworn statement and because the Court followed the required procedure under Rule 11, his petition for relief will be dismissed.

## IV. REMAINING NON-DISPOSITIVE MOTION

In addition to the petition, this Court is in possession of Petitioner's pro se motion that it "order" appointed CJA counsel to review the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), so that he can determine whether that case is relevant to

Petitioner's existing grounds for collateral relief [Doc. 53].[5]  In light of this Court's resolution of the underlying motion and because *Mathis* has no impact on his case, the request will be **DENIED as moot**.

V.      **CONCLUSION**

For the reasons discussed, Petitioner's pro se § 2255 motion [Docs. 44] will be **DENIED** and **DISMISSED WITH PREJUDICE**.  Petitioner's pro se request that this Court order CJA counsel to review *Mathis* [Doc. 53] will be **DENIED as moot**.  The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

---

[5] In *Mathis*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include "any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary.  136 S. Ct. at 2247–48, 53–54.  Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated-offense clause.  *Id.* at 2257.  Unlike the Iowa statute at issue in *Mathis*, Tennessee's aggravated robbery statute does not contain an indivisible list of means.